UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S. Y.,

      Plaintiff,

v.                                                    Case No.:  2:20-cv-606-JES-MRM

JAY VARAHIMATA
INVESTMENTS, LLC.,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**[1]

      This cause comes before the Court on Plaintiff's Motion to Proceed

Anonymously and for Entry of a Protective Order, filed on February 24, 2021.  (Doc.

35).  Defendant filed its response in opposition to Plaintiff's motion.  (*See* Doc. 45).

Additionally, Defendants in a related case propose an alternative protective order.

*See S.Y. v. Marriott International, Inc. et al.*, No. 2:20-cv-00627-JES-MRM, Doc. 63-2

(M.D. Fla. Mar. 10, 2021)  Plaintiff has not filed a reply in this case or any related

---

[1]  The motion was referred to the Undersigned.  The Eleventh Circuit has held that
"a ruling that modifies a protective order to revoke protections that conceal a party's
identity and private information from allegedly dangerous actors qualifies as a
collateral order."  *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1245-46 (11th Cir.
2020).  Additionally, "a magistrate judge may not . . . enter any other final order or
judgment that would be appealable if entered by a district judge, but a magistrate
judge may file a report and recommendation concerning these matters."  *In re
Proposed Amendments to the Local Rules of the United States District Court for the Middle
District of Florida*, No. 8:20-mc-00100-SDM, Doc. 3 at 4 (M.D. Fla. Oct. 29, 2020); *see
also* M.D. Fla. R. 1.02(b).  For these reasons, the Undersigned submits this Report
and Recommendation to the presiding United States District Judge.

case.  This matter is ripe for review.  For the reasons set forth in this Report and Recommendation, the Undersigned recommends that Plaintiff's Motion to Proceed Anonymously and for Entry of a Protective Order (Doc. 35) be **GRANTED in part** and **DENIED in part**.[2]

## BACKGROUND

This action began in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida on October 30, 2019, when Plaintiff and another alleged victim of sex trafficking sued over forty Defendant hotels.  *See S.Y. v. Naples Hotel Co.*, No. 2:20-cv-00118-JES-MRM, Doc. 1 at 3 (M.D. Fla. Feb. 21, 2020).[3]  The case was removed to this Court on February 21, 2020.  *Id.*  On August 5, 2020, the Court determined that severing the action was appropriate, *see S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020), and, therefore, Plaintiff filed twenty individual cases, including this case, against various hotel defendants.

---

[2] The Undersigned finds good cause to enter the same Report and Recommendation on Plaintiff's motion in each severed case brought by Plaintiff S.Y. or Plaintiff C.S. (the "related cases") stemming from the first-filed case, *S.Y. v. Naples Hotel Co.*, No. 2:20-cv-118-JES-MRM, for several reasons.  First, because the parties are similarly situated procedurally, a common order on anonymity and discovery procedure is appropriate.  Second, the parties' briefing in all twenty-nine related cases is substantially similar.  Third, a finding that Plaintiff is entitled to extensive protection in one case would be rendered essentially meaningless by a finding of minimal or no protection in one of the related cases brought by the same Plaintiff or her former co-Plaintiff.

[3] Unless otherwise specified, pinpoint citations for documents filed in CM/ECF refer to the page number in the CM/ECF legend at the top of the page, not the pagination of the document itself.

The operative Complaint in this case was filed on August 19, 2020, and alleges that Plaintiff was the victim of sex trafficking from 2015 through 2016 at Defendant's hotel premises.  (Doc. 1 at ¶ 86).  Relevant to this motion, Plaintiff seeks to hold Defendant liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).  (*See* Doc. 1).

In her motion, Plaintiff essentially requests that:  (1) she be permitted to proceed anonymously[4] in all public filings and in all public Court proceedings until the time of trial; and (2) the Court enter her proposed protective order (Doc. 35-2) to regulate how Defendants use and share her True Identity.  (*See* Doc. 35 at 2).[5]

Specifically, within Plaintiff's request for the entry of a Protective Order, Plaintiff seeks to:  (1) keep Plaintiff's True Identity "confidential during and after the conclusion of this matter," (Doc. 35-2 at 5); (2) require fact witnesses to sign an agreement to be bound by the proposed protective order, (*see id.* at 10), before Defendants may disclose Plaintiff's True Identity to any fact witnesses, (*id.* at 6); (3)

---

[4]  The parties use the terms "anonymously" and "pseudonymously" interchangeably in their papers.  Because Plaintiff seeks to use her actual initials as a pseudonym in lieu of disclosing her full name in the public record, the term "pseudonymously" more accurately describes the relief requested.  For the sake of judicial economy, however, the Undersigned does not attempt to split that etymological hair in this Report and Recommendation and uses the terms interchangeably as well.

[5]  The Undersigned adopts Plaintiff's definition of her "True Identity," which includes her names and aliases used at any time, date of birth, social security number, current and prior addresses, phone numbers, email addresses, social media or online user account names, photographs of Plaintiff, Plaintiff's likeness, and the names of Plaintiff's parents, siblings, and/or children.  (Doc. 35-2 at 2).

3

prevent Defendants from disclosing Plaintiff's True Identity to Plaintiff's alleged traffickers, (*id.*); (4) require Defendants to meet and confer with Plaintiff before any contact with Plaintiff's alleged traffickers, (*id.*); and (5) require the parties to use a pseudonym in place of Plaintiff's True Identity in all public filings "submitted during the pre-trial proceedings in this litigation," (*id.* at 7).  Additionally, while not addressed in her motion, Plaintiff's proposed protective order protects the identities of other alleged victims of sex trafficking by (1) requiring the parties to keep the identities of "Sex Trafficking Victims confidential during and after the conclusion of this matter," (*id.* at 5), (2) limiting who the parties may share alleged sex trafficking victims' identities with, (*id.* at 5-6), and (3) requiring the parties to redact or to use a pseudonym in place of any victim of sex trafficking's identity in all public filings "submitted during the pre-trial proceedings in this litigation," (*id.* at 7).  Notably, Plaintiff's proposed protective order seeks to impose the above limitations while simultaneously allowing the unrestricted "use of Protected Material of the Producing Party by the Producing Party."  (*Id.* at 5).

The Undersigned addresses Plaintiff's requests and proposed protective measures below.

### A.     Whether Plaintiff Should Be Permitted to Proceed Under a Pseudonym.

#### 1.     Arguments

To begin, while several Defendants in the related cases do not oppose Plaintiff's request to proceed pseudonymously through pretrial public filings, other Defendants do.  *Compare S.Y. v. Naples Hotel Co.*, No. 2:20-cv-00118-JES-MRM, Doc. 339 (M.D. Fla. Mar. 10, 2021), *with S.Y. v. Uomini & Kudai, LLC*, No. 2:20-cv-00602-JES-MRM, Doc. 51 (M.D. Fla. Mar. 17, 2021).  Therefore, the Undersigned treats Plaintiff's request to proceed anonymously as opposed.

Plaintiff argues that she should be permitted to proceed with her action anonymously, using only her initials, because she will be "required to disclose information of the utmost intimacy if her name is disclosed."  (Doc. 35 at 2, 6 (citations omitted)).  She contends that her status as a sex trafficking victim is highly sensitive and the nature of her claims will necessitate discovery involving "descriptions of [Plaintiff] in various stages of nudity and engaged in explicit sexual conduct that she was forced and coerced to engage in by her sex traffickers."  (*Id.* at 7).

Plaintiff also asserts that she should be permitted to proceed anonymously through this action due to the potential for psychological and physical harm.  (*Id.* at 11).  Specifically, Plaintiff contends that "she reasonably fears that she will be subject to harm and retaliation from her [traffickers and their] associates" if she cannot proceed anonymously.  (*Id.*).  Additionally, she claims that the "stigma attached to

sexual assault . . . could harm her professional relationships and future career aspirations." (*Id.*).

Plaintiff also argues that "granting [the request to proceed anonymously] will in no way prejudice the Defendants' ability [sic] to defend itself [sic] in this litigation." (*Id.* at 7 (citing *Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-00218-Orl-28TBS, 2018 WL 2017535, at *2 (M.D. Fla. May 1, 2018) (permitting the plaintiffs to proceed anonymously but requiring them to provide the defendants with their true identities))).  In support of this contention, Plaintiff states that she will provide Defendants with her True Identity and the identities of her traffickers "in a non-public manner," "upon the entry of a Protective Order." (*Id.* at 8, 12 (citations omitted)).

In sum, Plaintiff concludes that she should be permitted to proceed anonymously because:  (1) she will be compelled to divulge information of the utmost intimacy as a victim of sex trafficking if her identity is revealed on the public record, (*id.* at 2, 6); (2) there is a possibility that she will face the threat of physical harm at the hands of her traffickers or their associates if her identity is revealed, (*id.* at 11); (3) there is a possibility that her employment and social prospects will be harmed if her identity is revealed on the public docket, (*id.*); (4) Defendants will not be prejudiced because Plaintiff will provide them with her True Identity in a "non-public manner," (*id.* at 8, 12); and (5) the public's interest in access to judicial proceedings will not be meaningfully offended because all other aspects of the record will remain public, (*id.* at 12).

In response, the Defendants who object to Plaintiff's request to proceed anonymously generally argue that Plaintiff failed to meet her burden to overcome the "constitutionally-embedded [sic] presumption of openness in judicial pleadings" by failing to provide sufficient evidence for her arguments.  *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

Several Defendants also generally argue that permitting Plaintiff to proceed anonymously would be inequitable in light of Plaintiff's apparent national media campaign by which Plaintiff and Plaintiff's counsel placed Defendants and this litigation into the public spotlight.  *See* Corinne Ramey, *Lawsuits Accuse Big Hotel Chains of Allowing Sex Trafficking*, The Wall Street Journal (Mar. 4, 2020, 5:30 AM), https://www.wsj.com/articles/lawsuits-accuse-big-hotel-chains-of-allowing-sex-trafficking-11583317800 (detailing Plaintiff's accusations and naming several Defendant hotels); *see also Doe v. N. Carolina Cent. Univ.*, No. 1:98-cv-01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999) (denying a plaintiff's motion to proceed anonymously based in part on the plaintiff's attorney's statements to the media about the case).  Certain Defendants specifically contend that it would be inequitable to permit Plaintiff to avoid public scrutiny when Plaintiff's counsel was quoted in the media stating:  "[t]hese [Defendant hotels] permitted open sex trafficking to occur at each of their locations."  *See S.Y. v. Uomini & Kudai, LLC*, No. 2:20-cv-00602-JES-MRM, Doc. 51 at 7 (M.D. Fla. Mar. 17, 2021) (quoting Jake Allen & Ryan Mills, *22 Collier County Hotels, Motels Accused of Permitting Sex Trafficking, Lawsuit Claims*, Naples Daily News (Feb. 11, 2020, 12:14 PM),

https://www.naplesnews.com/story/news/local /2020/02/06/22-naples-hotels-and-motels-did-nothing-stop-sex-trafficking-2015-and-2016-collier-county/4565268002/; *Lawsuit Claims Florida Hotels Didn't Stop Sex Trafficking*, The Washington Times:  Associated Press (Feb. 9 2020), https://www.washingtontimes.com/news/2020/feb/9/lawsuit-claims-florida-hotels-didnt-stop-sex-traff/).  Some Defendants also emphasize that, along with voluntarily providing national news outlets with her story and Defendants' names, Plaintiff provided the media with her initials and Plaintiff S.Y. posed for a partially obscured photo in The Wall Street Journal.  *See* Corinne Ramey, *Lawsuits Accuse Big Hotel Chains of Allowing Sex Trafficking*, The Wall Street Journal (Mar. 4, 2020, 5:30 AM), https://www.wsj.com/articles/lawsuits-accuse-big-hotel-chains-of-allowing-sex-trafficking-11583317800.

### 2.   Legal Standard

Federal Rule of Civil Procedure 10(a) requires that "every pleading" in federal court "name all the parties."  Fed. R. Civ. P. 10(a).  This rule "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties."  *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011).  Although this creates a "strong presumption in favor of parties proceeding in their own names . . . the rule is not absolute."  *Id.*  A party may proceed anonymously or pseudonymously by establishing "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'"  *Doe v.*

*Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

Whether a party's right to privacy outweighs the presumption of judicial openness is a "totality-of-the-circumstances question." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020). The Eleventh Circuit has found that the "first step" is to consider the three factors analyzed in *Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (hereinafter "*SMU*"): "whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *In re Chiquita Brands Int'l Inc.*, 965 F.3d at 1247. Together with this step, the trial court should "carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (quoting *Plaintiff B*, 631 F.3d at 1316) (emphasis in original). For example, the court may also consider "whether the plaintiffs were minors, whether they were threatened with violence or physical harm by proceeding in their own names, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316; *see also Doe v. Neverson*, 820 F. App'x 984, 986-87 (11th Cir. 2020). Whether a party will be

permitted to proceed anonymously is a matter within the court's discretion.  *Id.* at 1315.

### 3.   Analysis

For the reasons set forth below, the Undersigned finds that Plaintiff has met her burden to proceed pseudonymously by establishing that her privacy rights and fear of harm outweigh the presumption of judicial openness.  *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d at 1247.

#### i.   Whether, absent anonymity, Plaintiff will be compelled to disclose information of the utmost intimacy.

In determining whether Plaintiff should be permitted to proceed pseudonymously, the Undersigned considers the only relevant factor of the *SMU* test—*i.e.*, whether the party seeking anonymity would be compelled, absent anonymity, to disclose information of the utmost intimacy.  *Id.* (citing *Plaintiff B*, 631 F.3d at 1316).  While courts historically prevented plaintiffs alleging sexual assault from proceeding anonymously, modern courts consider "judicially recognized aggravating factors, such as whether the plaintiff was a minor, whether she was threatened with violence or physical harm, and whether anonymity posed a unique threat of fundamental unfairness to the defendant."  *Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-00218-Orl-28TBS, 2018 WL 2017535, at *2 (M.D. Fla. May 1, 2018) (quotations omitted; citing *Plaintiff B*, 631 F.3d at 1316).

Because Plaintiff will need to disclose her experience as an alleged sex trafficking victim—an experience that she claims involved forced sexual service,

physical assaults, and psychological torment, (*see* Doc. 35 at 2)—the Undersigned finds that Plaintiff's experiences are "sensitive and highly personal in nature," and denying Plaintiff's motion would require her to disclose "information of the utmost intimacy." *See Plaintiff B*, 631 F.3d at 1316-17. Accordingly, the Undersigned finds that the second *SMU* factor weighs heavily in favor of granting Plaintiff's motion to proceed anonymously. *See Fla. Abolitionist, Inc.*, 2018 WL 2017535, at *2 (permitting a plaintiff to proceed anonymously where she would be required to disclose information related to her victimization by sex traffickers and their clients); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020), *order clarified*, No. 4:19-cv-00120, 2020 WL 8639343 (E.D. Va. July 30, 2020) (finding that a plaintiff could proceed anonymously where she alleged that she was regularly required to have sex for payment and beaten by her trafficker); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting a plaintiff's request to proceed under a pseudonym where she alleged she was a victim of human trafficking, forced labor, and sexual battery).

### ii.     Whether Plaintiff is at risk of retaliatory harm.

Further, the Undersigned finds that the potential risk of retaliation by Plaintiff's traffickers or their associates weighs in favor of granting Plaintiff's request to proceed anonymously. Plaintiff alleges that her traffickers previously "attacked, drugged, and forced her into sexual acts." (Doc. 35 at 9). Additionally, Plaintiff alleges that she was violently raped and beaten by her sex traffickers and their clients.

(*See, e.g.*, Doc. 1 at ¶¶ 83, 113, 117).  Plaintiff acknowledges, however, that her traffickers could likely identify her through her initials.  (Doc. 35 at 14).  Plaintiff also represents that at least two of her alleged traffickers are currently in prison.  (*Id.* at 4).

Based on these representations, combined with the widespread public dissemination of Plaintiff's initials along with the names of her alleged traffickers, *see, e.g.*, Jake Allen & Ryan Mills, *22 Collier County Hotels, Motels Accused of Permitting Sex Trafficking, Lawsuit Claims*, Naples Daily News (Feb. 11, 2020, 12:14 PM), https://www.naplesnews.com/story/news/local /2020/02/06/22-naples-hotels-and-motels-did-nothing-stop-sex-trafficking-2015-and-2016-collier-county/4565268002/ (stating that Plaintiff S.Y. and Plaintiff C.S. were trafficked by Keith Lewis and Gregory Hines), the Undersigned is not persuaded by Plaintiff's argument that proceeding pseudonymously through her initials will shield her involvement in this case from her traffickers.

Nonetheless, the Undersigned finds that the potential risk of retaliation still weighs in favor of permitting Plaintiff to proceed pseudonymously as it may help her avoid potential detection by her alleged traffickers' associates, who may not be fully aware of Plaintiff's identity or initials, fully aware of this litigation, or presently incarcerated.  *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020) (finding that a plaintiff could proceed anonymously based, *inter alia*, on the risk of her trafficker locating and harming her). Accordingly, the Undersigned finds that the potential risk of physical harm and

retaliation against Plaintiff by her alleged traffickers' associates weighs in favor of permitting Plaintiff to proceed pseudonymously.

### iii.   Whether Defendants are unfairly prejudiced by Plaintiff's use of a pseudonym.

Moreover, the Undersigned finds that there is little risk of unfair prejudice to Defendants if Plaintiff is permitted to proceed in this action pseudonymously. Several Defendants argue that it would be patently unfair to permit Plaintiff to proceed anonymously given that her lawyers sought out national media attention for her claims. *See, e.g.*, *S.Y. v. Uomini & Kudai, LLC*, No. 2:20-cv-00602-JES-MRM, Doc. 51 at 6-7 (M.D. Fla. Mar. 17, 2021) (citing *Doe v. N. Carolina Cent. Univ.*, No. 1:98-cv-01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999)). The Undersigned finds this argument unpersuasive. *See Doe v. Cabrera*, 307 F.R.D. 1, 9-10 (D.D.C. 2014) (holding that it is not unfair to a defendant to permit a plaintiff to proceed anonymously during pretrial proceedings despite the plaintiff's troubling public media statements about her case).

The Undersigned agrees that it seems incongruous for Plaintiff's counsel to make public media statements about the litigation and Plaintiff's alleged traffickers while also asking the Court and Defendants to go to great lengths to avoid drawing attention to Plaintiff's identity. To allege that Plaintiff's traffickers are violent individuals capable of harming and abusing Plaintiff, (*see* Doc. 35 at 12), and that "Plaintiff's initials . . . are the essential link that would allow her traffickers to identify and target her," (*id.* at 14), while simultaneously engaging in a national

media campaign through which Plaintiff's initials were published along with the names of her traffickers in connection with the instant litigation, *see* Jake Allen & Ryan Mills, *22 Collier County Hotels, Motels Accused of Permitting Sex Trafficking, Lawsuit Claims*, Naples Daily News (Feb. 11, 2020, 12:14 PM), https://www.naplesnews.com/story/news/local/2020/02/06/22-naples-hotels-and-motels-did-nothing-stop-sex-trafficking-2015-and-2016-collier-county/4565268002/, suggests a questionable lack of caution by Plaintiff's counsel.

Even though counsel's actions put Plaintiff's involvement with her traffickers and this case into the public spotlight, the Undersigned finds that it would not be unfair to permit Plaintiff to proceed pseudonymously outside of trial. *See Cabrera*, 307 F.R.D. at 9-10. Defendants had the opportunity to respond to Plaintiff's public allegations, Plaintiff's counsel's public statements never revealed Plaintiff's entire True Identity, and any residual prejudice against Defendants as a result of Plaintiff's media activity is likely minimal.

Moreover, Plaintiff's request to proceed pseudonymously is only meant to protect her True Identity from the public at large outside of trial because she has stated that she will share her True Identity with Defendants in a "non-public manner." (Doc. 35 at 8, 12). Because Defendants will have access to Plaintiff's True Identity, their discovery efforts will not be unfairly prejudiced. *See B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-656-BLF, 2020 WL 4368214, at *10 (N.D. Cal. July 30, 2020) ("Prejudice to Defendants is minimal because B.M. will agree to reveal her identity for purposes of investigating her claims."); *see also A.D. v. Wyndham Hotels &*

14

*Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020)

("There is very little risk of prejudice to Defendant in allowing Plaintiff to proceed

under pseudonym [because] Plaintiff 'is willing to provide her [identity] to the

Defendant.'"); *E.E.O.C. v. Spoa, LLC*, No. CCB-13-1615, 2013 WL 5634337, at *4

(D. Md. Oct. 15, 2013) (permitting a plaintiff to proceed pseudonymously where her

identity was revealed to the defendant so that defendant could respond to the

allegations).

> ### iv. Whether the public's interest in open judicial proceedings outweighs Plaintiff's privacy rights.

Finally, the Undersigned finds that the public's interest in open judicial

proceedings does not outweigh any of the above considerations when, as here, all

aspects of the case, other than Plaintiff's True Identity, will remain accessible on the

public docket. *See Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("The assurance of

fairness preserved by public presence at a trial is not lost when one party's cause is

pursued under a fictitious name.").

In sum, considering all the circumstances of this case, including the sensitive

nature of the issues, the potential risk of harm to Plaintiff, the minimal risk of unfair

prejudice to Defendants, and the public's access to all other information on the

docket, the Undersigned recommends that the presiding United States District Judge

permit Plaintiff to proceed under a pseudonym outside of trial. *See In re Chiquita*

*Brands Int'l Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020). If Plaintiff seeks leave to

proceed pseudonymously at trial, the presiding United States District Judge should

require her to file an appropriate motion seeking that relief no later than forty-five days before the final pretrial conference in this case. *See Cabrera*, 307 F.R.D. at 10 (permitting a plaintiff to proceed anonymously during pretrial proceedings but holding that the plaintiff may not proceed anonymously at trial because of the risk of implicitly influencing the jury regarding the amount of harm the plaintiff suffered).

Next, the Undersigned addresses the sufficiency of the actual protective order Plaintiff proposes and the requested protective measures set forth therein.

### B.   Whether Plaintiff Has Shown Good Cause for the Entry of Her Proposed Protective Order.

#### 1.   Arguments

Plaintiff argues that good cause exists to limit the disclosure of her True Identity to her alleged traffickers because she has a "credible fear for the physical safety of herself and her family." (Doc. 35 at 8). She argues that her proposed protective order "is based entirely on protecting [herself] from further abuse at the hands of her [traffickers], who she knows as able to perpetrate violence and abuse against her." (*Id.* at 12). She also contends that any evidence offered by her alleged traffickers will be of "dubious probative value" and Defendants will have access to sufficient facts to investigate her claims by reviewing their own internal records. (*Id.* at 13-14). In sum, Plaintiff argues that good cause exists for the entry of her proposed protective order based on her fear of harm and Defendants' abilities to investigate her claims despite the protections she seeks. (*Id.*). Additionally, while Plaintiff never expressly argues that the protections in her proposed protective order

should be extended to other victims of sex trafficking, she applies limitations to the parties' use of their identities.  As currently written, Plaintiff's proposed protective order (1) defines other "Victim[s] of Sex Trafficking," (Doc. 35-2 at 4), (2) requires the parties to keep the identities of "Sex Trafficking Victims confidential during and after the conclusion of this matter," (*id.* at 5), (3) limits who the parties may share other alleged sex trafficking victims' identities with, (*id.* at 5-6), and (4) requires the parties to redact or to use a pseudonym in place of any victim of sex trafficking's identity in all public filings "submitted during the pre-trial proceedings in this litigation," (*id.* at 7).

In response, several Defendants argue that Plaintiff has failed to show good cause for the entry of her proposed protective order because she has only alleged a generalized, vague fear of retaliation from her traffickers.  Some Defendants also argue that Plaintiff has performed actions inconsistent with her alleged fear of harm, referring to Plaintiff's decisions to name her alleged traffickers in this lawsuit and communicate with national media outlets.  In regard to other alleged victims of sex trafficking, Defendants left out any argument asserting the level of protection other potential victims' identities should receive.

### 2.    Legal Standard

Under Federal Rule of Civil Procedure 26(c)(1), any "party or any person from whom discovery is sought may move for a protective order," and the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

"The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (citing *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).   The decision to enter a protective order is within the Court's discretion and does not depend on a legal privilege.  *Id.* at 429 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985)).

The Eleventh Circuit has found that in determining whether to enter a protective order, courts must analyze:  "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order."  *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).  However, these factors are not exhaustive and "the sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause' . . . [, which] signifies a sound basis or legitimate need to take judicial action."  *Id.*  Moreover, the most critical factor for the Court to analyze under Rule 26(c) is the "balancing of interests" between the parties.  *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d at 1251.

### 3.     Analysis

The Undersigned finds that Plaintiff failed to show good cause for entering her proposed protective order as it is presently written.  Plaintiff has, however, shown good cause entering a more limited protective order that protects Plaintiff's True

Identity—and that of her former co-plaintiff C.S.—while also allowing Defendants to effectively investigate and defend against Plaintiff's claims.[6]

> i.   **Whether Plaintiff's proposed protective order balances the parties' interests.**

To begin, the Undersigned finds that Plaintiff's proposed protective order, as written, fails to strike the appropriate balance between Plaintiff's safety interests and Defendants' interests in investigating and defending against Plaintiff's claims. *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d at 1251. Rather, Plaintiff's proposed protective order appears to be an eclectic list of excessively restrictive protective measures that are not meaningfully tailored to the specific circumstances in Plaintiff's case. (*See* Doc. 35-2); *see also In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

Not only does Plaintiff propose restrictions that significantly hinder Defendants' abilities to investigate her claims, Plaintiff also appears to propose that she be permitted to proceed with her own investigation unrestricted by the limitations imposed on Defendants. (*Compare, e.g.*, Doc. 35-2 at 5 ("*Nothing herein*

---

[6] For purposes of this Report and Recommendation, the Undersigned recommends that any protective order that restricts the use and disclosure of Plaintiff C.S.'s True Identity extend and apply equally to Plaintiff S.Y.'s True Identity, and vice versa, regardless of who the named Plaintiff is in the case. Because these plaintiffs' cases are historically linked, the Undersigned finds that the disclosure of one plaintiff's True Identity in a case in which she is not the named plaintiff would render meaningless any protective measures imposed in a case in which she is the named plaintiff. As a practical matter, therefore, the True Identity of C.S. must be protected in S.Y.'s case, and vice versa for a protective order to have any meaningful effect.

shall restrict the use of Protected Material of the Producing Party *by the Producing Party*.") (emphasis added), *with id.* at 5-6 ("[T]he *Parties* may disclose Plaintiff's Identity [to fact witnesses after they sign] the agreement to be bound by this Protective Order.") (emphasis added)).  These provisions are facially incompatible and Plaintiff cannot show good cause for a protective order containing them.

Moreover, even if Plaintiff's proposed protective order were to be rewritten, to the extent it may still seek to impose severe restrictions on Defendants' abilities to disclose Plaintiff's True Identity to fact witnesses while allowing for Plaintiff's unrestricted use of the "Protected Material," the Undersigned cannot find that the proposed protective order sufficiently balances the interests of the parties.  *See In re Chiquita Brands Int'l, Inc.*, 965 F.3d at 1251.

Additionally, Plaintiff's own proposed protective order contains multiple references to sections within the proposed protective order that do not exist.  For example, the proposed protective order states:  "whether disclosed by Plaintiff pursuant to *Paragraph 6* above . . . designated pursuant to *Section I.R.* herein."  (Doc. 35-2 at 6-7 (emphasis added)).  Upon review of the proposed protective order, however, it seems that no such paragraph or section exists.  While poor drafting alone is not a sufficient justification to reject Plaintiff's proposed protective order in its entirety without modification, the prevalence of errors here renders Plaintiff's proposed protective order contradictory and confusing such that it would be impossible to enforce as-is and too onerous for the Court to try to fix *sua sponte*.

On the whole, the Undersigned recommends rejecting Plaintiff's proposed protective order as it is currently written.  At base, the proposed protective order is poorly drafted and contains conflicting provisions that do not sufficiently delineate *each parties'* duties regarding the protection of Plaintiff's True Identity and the identities of other alleged victims of sex trafficking.  (*See* Doc. 35-2).

Despite these issues with the terms of the proposed protective order, the Undersigned finds that Plaintiff's alleged fear of harm is nonetheless reasonable and credible.  Plaintiff alleges that she was the victim of sex trafficking for one year from 2015 through 2016.  (Doc. 1 at ¶ 86).  She alleges that her traffickers "attacked, drugged, and forced her into sexual acts."  (Doc. 35 at 9).  Additionally, Plaintiff alleges that she was violently raped and beaten by her sex traffickers and their clients.  (*See, e.g.*, Doc. 1 at ¶¶ 83, 113, 117).  With these horrifying allegations as a backdrop, Plaintiff's fear of potential retaliation from her traffickers, their associates, or the other alleged abusers involved is both reasonable and credible.  Thus, Plaintiff has established ample good cause for obtaining some form of protective order.

While the Undersigned acknowledges the seriousness of these allegations and the importance of maintaining Plaintiff's safety during this litigation and afterward, the Undersigned is compelled to acknowledge that Defendants will be unable to meaningfully investigate and defend against Plaintiff's claims if they are not permitted to disclose Plaintiff's True Identity to her alleged traffickers.  Accordingly, the protective order issued here must be narrowly tailored to protect Plaintiff's True Identity, the True Identity of her former co-plaintiff, and other victims of sex

trafficking, while also allowing Defendants to investigate and defend against
Plaintiff's claims.

Courts facing substantially similar issues have used various approaches to
attempt to balance the parties' interests and needs.  *See, e.g.*, *J.C. v. Choice Hotels Int'l,
Inc.*, No. 20-cv-00155-WHO, 2021 WL 1146406, at *4 (N.D. Cal. Mar. 4, 2021)
(finding good cause for the entry of a protective order that balances the parties'
interests by:  (1) requiring the defendants to submit an *ex parte* letter to the court of
their intent to reveal the plaintiff's identity to her traffickers; and (2) requiring
witnesses to sign an agreement to be bound by the protective order before the
plaintiff's identity is revealed to them); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No.
4:19-cv-00120, 2020 WL 8639346, at *2-4 (E.D. Va. Sept. 21, 2020) (permitting the
defendant to disclose the plaintiff's identity to her traffickers and any potential,
anticipated, or actual fact witnesses, subject to the defendant notifying the court *ex
parte* of its intent to contact the traffickers and requiring fact witnesses to sign an
agreement to be bound by the protective order before they are given the plaintiff's
identity); *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-04965, 2020 WL 5361731, at *5
(S.D. Ohio Sept. 8, 2020) (finding good cause for a protective order that requires
counsel for the plaintiff and the defendants to meet and confer before the defendants
can disclose the plaintiff's identity to her known traffickers); *see also E.S. v. Best W.
Int'l, Inc.*, No. 3:20-cv-00050-M, 2021 WL 37458, at *3 (N.D. Tex. Jan. 4, 2021)
("After balancing the interests of both parties, the Court finds that certain restrictions

on Defendants' disclosure of Plaintiff's identity to her alleged trafficker are

necessary.").

In view of the foregoing, the Undersigned next addresses the propriety of the

protective measures Plaintiff requests.

> **ii.   Whether Plaintiff has demonstrated good cause to prevent Defendants from disclosing Plaintiff's True Identity to her alleged traffickers.**

The Undersigned finds that Plaintiff has not met her burden to justify

preventing Defendants from sharing any part of her True Identity with her alleged

traffickers.

In reaching this conclusion, the Undersigned notes that Plaintiff failed to

address—in either her motion or her proposed protective order—the inclusion of two

of her alleged traffickers, Gregory Hines and Keith Lewis, as defendants in both the

original Complaint and First Amended Complaint of the first-filed case.  *See S.Y. v.*

*Naples Hotel Co.*, No. 2:20-cv-00118-JES-MRM, Docs. 1, 3 (M.D. Fla. Mar. 10,

2021).  Additionally, Plaintiff failed to address her national media campaign,

discussed *supra*, in which her initials were disclosed along with the names of two of

her alleged traffickers.

This is important because the Undersigned cannot ignore the apparent

disconnect between Plaintiff's actions—*i.e.*, initially naming her alleged traffickers

as Defendants in this litigation and disseminating her initials and information about this

case through a national media campaign—on the one hand, and her statement that

"[she] has a credible fear that her trafficker[s]—through [their] associates or

otherwise—might harm her again should [they] learn of this litigation," on the other hand.  (Doc. 35 at 9, 12).  Specifically, by engaging in a national media campaign, in which Plaintiff supplied her initials, the names of her traffickers, and the existence of this litigation, her alleged traffickers have likely already been made aware of the litigation.

Additionally, Plaintiff all but concedes that her traffickers can likely identify her through her own public representations.  (*See id.* at 14 ("Plaintiff's initials and identity are the essential link that would allow her traffickers to identify and target her.")).  Accordingly, Plaintiff cannot reasonably argue that Defendants will increase the potential of retaliatory harm against her by making her alleged traffickers aware of this litigation and sharing her True Identity with them, given that Plaintiff volunteered her own initials, which she admits are sufficient for the traffickers to identify her, in connection with this litigation in the public media.

Notably, courts have permitted defendants to contact a plaintiff's alleged trafficker, subject to certain restrictions, even when the plaintiff alleges more direct threats to her safety, including that the plaintiff's trafficker repeatedly harmed her, harmed her child, and was not incarcerated.  *See A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-04965, 2020 WL 5361731, at *5 (S.D. Ohio Sept. 8, 2020) (permitting the defendants to disclose the plaintiff's true identity to her alleged trafficker after engaging in a meet and confer with the plaintiff and, if no agreement was reached, filing a motion with the court explaining the necessity of the disclosure); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 8639343, at *3 (E.D.

Va. July 30, 2020) (permitting the defendant to disclose the plaintiff's true identity to her alleged trafficker(s) after providing the plaintiff with fourteen days' notice and permitting the plaintiff to file a motion objecting to the disclosure within seven days).

Further, Plaintiff's argument that her traffickers' testimony "has no probative value" is not persuasive.  Plaintiff brings this action under the TVPRA.  In providing civil remedies to victims of certain types of human trafficking, the TVPRA states:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant here is contained within 18 U.S.C. § 1591(a), which provides:

> (a) Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a

> commercial sex act, or that the person has not attained the
> age of 18 years and will be caused to engage in a commercial
> sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Thus, to recover under her TVPRA claims, Plaintiff must establish that she is "a victim of violation of [18 U.S.C. § 1591(a)]," and she must also establish that Defendants (1) knowingly benefitted financially, (2) from participating in a venture, (3) which Defendants knew or should have known has engaged in sex trafficking under 18 U.S.C. § 1591(a). *See S.Y., Plaintiff, v. Choice Hotels Int'l, Inc.*, No. 2:20-cv-00118-JES-MRM, 2021 WL 1688972, at *3 (M.D. Fla. Apr. 29, 2021).

Despite arguing for present purposes that her traffickers' testimony provides no probative value, Plaintiff actually alleges in her Complaint that: "[Defendants'] agents and employees made promises to [Plaintiff's alleged sex traffickers] to not interfere with [Plaintiff] who was a victim of human sex trafficking and slavery," (Doc. 1 at ¶ 75); "[Defendants] knew or had constructive knowledge, that the women with Plaintiff's sex traffickers, including [Plaintiff], were used to carry out the commercial sex trade and sale of illegal drugs," (*id.* at ¶ 91); and "[Defendants] rendered substantial assistance to Plaintiff's sex traffickers and 'Johns' in carrying out her [sex trafficking and Defendants turned] a blind eye to the unlawful conduct taking place so they could obtain revenue from the renting of the rooms," (*id.* at ¶ 210). These allegations plainly involve Defendants' alleged interactions with Plaintiff's traffickers and her traffickers' actions. Accordingly, the Undersigned finds that Defendants cannot be prevented from contacting the alleged traffickers and

disclosing Plaintiff's identity to them because the traffickers' actions and testimony are potentially integral to defending against Plaintiff's claims.  Indeed, due process requires that Defendants be given an opportunity to present every available defense and Defendants, therefore, should be permitted to contact Plaintiff's alleged traffickers and disclose Plaintiff's identity to them if it is reasonably necessary to help the alleged traffickers recall, relate, or explain facts or testify about Plaintiff's claims. *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

Additionally, Plaintiff's claims are based on a central premise that Defendants are required to investigate sex trafficking operations on their properties.  Significantly restricting Defendants' abilities to communicate with witnesses who have relevant personal knowledge, facts, and testimony will impermissibly prejudice Defendants' abilities to defend against Plaintiff's claims.

Accordingly, the Undersigned finds that Defendants must be permitted to share at least some of Plaintiff's identifying information with her alleged traffickers to the extent that the information is reasonably necessary to investigate and defend against Plaintiff's claims.  *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 8639343, at *3 (E.D. Va. July 30, 2020) ("The restrictions proposed by [the plaintiff]—which would make it impossible for [the defendant] to question the alleged trafficker about the alleged trafficking of [the plaintiff] and difficult to depose the alleged trafficker at all—are too extreme.").

Instead of preventing Defendants from disclosing any identifying information, the Undersigned recommends that the presiding United States District Judge adopt a

more workable and practical approach that conserves judicial resources and serves

judicial economy.  Specifically, the Undersigned finds that Defendants should be

limited in advance by court order to disclosing only certain identifying information

about Plaintiff to her alleged traffickers that may be reasonably necessary for the

alleged traffickers to recall, relate, or explain facts relevant to this litigation or to

testify as to those facts.  The Undersigned recommends that this identifying

information be strictly limited to any names, aliases, pictures, or images used by or

depicting Plaintiff or her likeness during the relevant time period (*i.e.*, the time that

Plaintiff alleges she was trafficked from 2013 through 2016).  Defendants should not

be permitted to reveal to the traffickers Plaintiff's Social Security number, her date of

birth, any names, aliases, pictures, or images used by or depicting Plaintiff or her

likeness outside of the relevant time period, her contact information (including her

addresses, phone numbers, email addresses, employers, schools) used at any time,

her family members' names, or any other identifying information falling within her

True Identity, as that term is used here.  Defendants should also not be permitted to

reveal to the traffickers any information as to whether Plaintiff has moved to a

different state or changed her name.  The Undersigned finds that permitting the

limited disclosures described above strikes an appropriate balance between the

parties' interests without prejudicing any Defendant's ability to investigate and to

defend against the claims in this litigation.

### iii.   Whether Plaintiff has demonstrated good cause to require Defendants to notify or to meet and confer with Plaintiff before contacting her alleged traffickers.

Before disclosing identifying information about an alleged sex trafficking victim to an alleged trafficker, some courts have required a defendant to either:  (1) meet and confer with the plaintiff's counsel regarding the necessity of the defendant's disclosure of the plaintiff's identity, and if no agreement is reached, require the defendant to file a motion with the court requesting to make the disclosure, *see A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-04965, 2020 WL 5361731, at *5 (S.D. Ohio Sept. 8, 2020); or (2) file an *ex parte* motion with the court describing the necessity of the disclosure of the plaintiff's identity, *see A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-00120, 2020 WL 8639346, at *3 (E.D. Va. Sept. 21, 2020).  The Undersigned finds that these approaches are not appropriate or warranted in this case.

The Undersigned finds that the meet-and-confer approach is not appropriate in this case because of Defendants' stated concerns regarding the protection of attorney work product.  *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (finding that protected attorney work product is reflected in "interviews, statements, memorandum, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways").  While it is no secret that Defendants intend to contact Plaintiff's alleged traffickers, compulsory disclosure to Plaintiff of the timing, frequency, and extent of Defendants' contact with the traffickers would likely reveal defense counsels' strategies.  *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2021 WL 1146406, at *5 (N.D. Cal. Mar. 4, 2021) (holding that defendants

need not provide a plaintiff with notice whenever they contact the plaintiff's alleged

traffickers in light of the defendants' work product confidentiality concerns).

In addition, the Undersigned is not persuaded by Plaintiff's argument that a

notice requirement will allow "Plaintiff to take additional precautions in her daily life

for a time following the Defendants' attempted contact with her trafficker(s)." (*See*

Doc. 35 at 17).  Rather, the Undersigned finds that Plaintiff should be taking

"precautions in her daily life" given that Plaintiff filed this lawsuit, initially named

her traffickers as Defendants on the public docket, and brought national media

attention to her claims.  Moreover, Plaintiff and her former co-Plaintiff must have

recognized that, as a result of bringing twenty-nine similar cases against multiple

Defendant hotels, her traffickers would be contacted by each Defendant many times

over the course of each action.

Similarly, requiring Defendants to obtain Court approval by filing a motion—

*ex parte* or otherwise—is not appropriate or warranted because it is not at all practical

or realistic for the Court to meaningfully evaluate such a motion.  Put simply, there

is no way for this Court to reliably determine, on a disclosure-by-disclosure basis,

whether any particular disclosure proposed by a defendant to any alleged trafficker

will be dangerous for or harmful to Plaintiff such that the Court should prohibit the

disclosure.  Because the Court does not have the practical ability to determine

whether any particular disclosure to any alleged trafficker at any time is more or less

likely to present a danger to the Plaintiff, requiring a motion to be filed before each

and every contact with the alleged traffickers would be a meaningless exercise and a waste of judicial resources.

The Undersigned is also not persuaded by Plaintiff's argument that requiring Defendants to give notice to Plaintiff's counsel and to obtain permission from the Court will reduce the possibility of inadvertent or inappropriate disclosures to Plaintiff's alleged traffickers.  Because Defendants' disclosures will be governed by a protective order entered in advance of contacting the alleged traffickers, Defendants and their counsel will be well aware of what information they are or are not permitted to divulge and Defendants will be subject to sanctions, including a finding of contempt and entry of a default, if they fail to adhere to the protective order. Plaintiff has not adequately or convincingly demonstrated how requiring Defendants to give notice or obtain permission before contacting any alleged trafficker and revealing Plaintiff's identity will reduce the potential for either inadvertent or inappropriate disclosures.

Accordingly, the Undersigned finds that Plaintiff has not shown good cause for a protective measure that threatens to infringe upon or violate the work product protection.  Nevertheless, the Undersigned finds that good cause exists for the entry of a protective order that incorporates the less restrictive protective measures recommended above without requiring Defendants to provide notice to Plaintiff or to obtain the Court's approval before contacting the alleged traffickers.

### iv.   Whether Plaintiff has demonstrated good cause to require other fact witnesses to sign an agreement to be bound by the protective order.

The Undersigned finds that Plaintiff has demonstrated the requisite good cause to require any *other* fact witness[7] to sign an agreement to be bound by the protective order before Defendants can reveal Plaintiff's True Identity to the fact witness.

Several Defendants argue generally that requiring potential fact witnesses to sign a protective order compelling them to maintain the confidentiality of Plaintiff's True Identity would have a significant chilling effect on Defendants' abilities to interview potential witnesses.

Notwithstanding Defendants' concerns, the Undersigned finds that there is good cause for this protective measure in light of the finding that Plaintiff is entitled to proceed anonymously during this litigation outside of the trial.  Both an order permitting Plaintiff to proceed anonymously and a protective order limiting the disclosure of Plaintiff's identifying information would be rendered practically meaningless if other fact witnesses are not required to or do not agree to be bound by the protective order.  *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2021 WL 1146406, at *6 (N.D. Cal. Mar. 4, 2021) ("If a witness refuses to sign an agreement ensuring that protected information will not be further disseminated, I

---

[7]  The Undersigned finds that it would be impracticable or unrealistic to require the alleged traffickers to sign an agreement to be bound by the protective order.

would have 'little confidence that the witness will keep [Plaintiff's] identity . . . confidential.'" (quotation omitted)).  Without requiring a fact witness to sign an agreement to be bound by the protective order, there is nothing preventing that witness from disclosing Plaintiff's True Identity to other third parties.

But the potential that a fact witness may refuse certainly exists and the parties may still wish to pursue obtaining information or testimony from the witness.  If a fact witness refuses to sign an agreement to be bound by the protective order, the Undersigned recommends permitting Defendants to file an *ex parte* motion with the Court seeking leave to reveal Plaintiff's True Identity to that fact witness upon a showing of good cause.  Granting this relief will allow the Court to specify or narrowly tailor the identifying information, if any, to be disclosed to the witness based on the witness's relevance to the action.  Allowing the motion to be filed *ex parte* mitigates any concerns about infringing on attorney work product.  Because the number of witnesses who refuse to agree to be bound by the protective order will likely be few, requiring an *ex parte* motion is not likely to unduly burden judicial resources.

Thus, the Undersigned recommends requiring the parties to include a provision in their proposed protective order that would require potential, anticipated, or actual fact witnesses to review the protective order and sign a written agreement to be bound by the protective order, subject to any Defendant's ability to file an *ex parte* motion upon a showing of good cause seeking the Court's approval to disclose

Plaintiff's identifying information to potential, anticipated, or actual fact witnesses who refuse to sign the agreement.

> **v.    Whether Plaintiff has demonstrated good cause to keep her True Identity confidential during and after the conclusion of this litigation.**

The Undersigned finds that Plaintiff has shown the requisite good cause for a protective order that requires her True Identity to be treated as confidential and not disclosed during this litigation—until trial—and after the conclusion of this litigation, except that disclosure may be made to:  (1) the judges, officers, employees, and stenographic reporters of this Court; (2) counsel representing the parties (including supervisors and support personnel whose functions require access to the identities of Plaintiff and her traffickers); (3) any potential, anticipated, or actual fact witness and their counsel (subject to any additional restrictions applicable to disclosing Plaintiff's True Identity to those witnesses and to Plaintiff's alleged traffickers as required by the Court's forthcoming order on this Report and Recommendation); (4) independent experts consulted or retained by counsel for assistance in the preparation or prosecution of claims or defenses in this action, to the extent reasonably necessary for such experts to prepare a written opinion or to prepare to testify or assist counsel and only if the expert agrees to be bound by the protective order; (5) other outside consultants or investigators retained specifically in connection with this litigation if the consultant or investigator agrees to be bound by the protective order; (6) independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection

with this litigation; (7) any mediator appointed by the Court or jointly selected by the parties; (8) government agencies and agency personnel, but only to the extent that the disclosure of Plaintiff's True Identity is necessary to litigate any claim or defense or to comply with any legal obligation or requirement to disclose; and (9) any other person who is so designated by order of this Court or by written agreement of the parties for purposes of this litigation.

Admittedly, it is awkward to recommend that Plaintiff's True Identity remain confidential under the protective order after trial *if* Plaintiff is not ultimately permitted to proceed anonymously at trial. The Undersigned believes that continuing protection post-trial is nevertheless warranted and necessary because Defendants, their counsel, witnesses, and others who agree to be bound by the protective order will certainly obtain information regarding Plaintiff's identity that is not divulged during the trial. For example, Plaintiff's Social Security number, current address, current employer, email addresses, social media or online user account names, photographs, likeness, and the names of Plaintiff's parents, siblings, and/or children may not be specifically disclosed or placed into the record during the course of trial even if she is not permitted to proceed anonymously at trial. That undisclosed identifying information should continue to be treated as confidential by the parties, witnesses, and others who agree to be bound by the protective order even after the conclusion of the trial because doing so incrementally reduces the risk of danger to Plaintiff's safety and the safety of her family in the future.

As discussed above, if Plaintiff wishes to proceed anonymously *at trial*, the Undersigned recommends that Plaintiff be required to file a motion requesting leave to do so no less than forty-five days before the final pretrial conference.

### vi.    Whether Plaintiff has demonstrated good cause to prevent Defendants from revealing her traffickers' identifying information on the public docket.

The Undersigned finds that Plaintiff has not shown good cause to prevent Defendants from disclosing her alleged traffickers' identifying information on the public docket.

While Plaintiff's motion proposes that "Defendants be prohibited from disclosing trafficker's [sic] name or other identifying information on the public docket in this case," (Doc. 35 at 8), she does not provide any argument or authority to support the request, nor does her proposed protective order contain a provision that would have the requested effect, (*see* Doc. 35-2).  Nonetheless, several Defendants contend that Plaintiff seeks to prevent them from disclosing her alleged traffickers' identities on the public docket.

The Undersigned finds that Plaintiff has failed to demonstrate sufficient good cause to grant this request based on Plaintiff's own continual identification of her traffickers' names on the public docket and in her national media campaign.  (*See, e.g.*, Doc. 35 at 3-4); *see also* Corinne Ramey, *Lawsuits Accuse Big Hotel Chains of Allowing Sex Trafficking*, The Wall Street Journal (Mar. 4, 2020, 5:30 AM), https://www.wsj.com/articles/lawsuits-accuse-big-hotel-chains-of-allowing-sex-

trafficking-11583317800 (detailing Plaintiff's accusations and naming several

Defendant hotels).

> ### vii. Whether Plaintiff has demonstrated good cause to protect the True Identity of other alleged victims of sex trafficking.

Plaintiff also seeks to extend the protections of the protective order to other

alleged victims of sex trafficking, so designated under her proposed protective order.

While Plaintiff's proposed protective order defines the term "Victim of Sex

Trafficking," Plaintiff never expressly argues for an extension of the protective

measures to other victims of sex trafficking or explains the mechanics of how those

protections will be implemented for other victims. Nonetheless, the Undersigned

finds good cause for the Court to enter an appropriately tailored protective order

limiting the parties' use of information identifying other victims of sex trafficking for

the same reasons Plaintiff's True Identity should be protected.

During this litigation the parties will likely discover or reveal sensitive

personal information regarding third parties who have endured experiences similar to

Plaintiff's experience. The same reasoning that applies to limit the disclosure of

Plaintiff's True Identity applies to limit the disclosure of any other victim's True

Identity, especially given that the other victim is not bringing an affirmative claim for

relief and is not represented in these proceedings. Thus, the Undersigned finds that

good cause exists to attempt to protect the identities of any other victims through an

appropriately tailored protective order.

Specifically, the Undersigned recommends that the parties be required to craft and propose language in a modified proposed protective order that addresses all the issues identified above and also affirmatively extends the same or similar protections afforded to Plaintiff to other victims of sex trafficking with clearly defined procedures for, *inter alia*:  designating persons as victims of sex trafficking; communicating that designation to persons bound by the protective order; and challenging any such designations that are disputed.

## CONCLUSION

For all of the foregoing reasons, the Undersigned finds that Plaintiff should be permitted to proceed anonymously during this litigation outside of trial, at which time Plaintiff should be permitted to move, no less than forty-five days before the final pretrial conference, to proceed anonymously at trial.  Additionally, the Undersigned finds that Plaintiff has failed to show good cause for the entry of her proposed protective order as it is currently written.  The Undersigned finds, however, Plaintiff has shown good cause for the entry of a modified form of protective order that is consistent with the findings and limitations outlined herein.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. Plaintiff's Motion to Proceed Anonymously and for Entry of a Protective Order (Doc. 35) be **GRANTED in part** and **DENIED in part**.

2.      Plaintiff be permitted to proceed pseudonymously throughout the course of these proceedings and referenced as "S.Y." or "Plaintiff" in all filings and Court proceedings, until the time of trial.

3.      The parties be directed to submit a revised, stipulated protective order that contains identical provisions in all twenty-nine related S.Y. and C.S. cases, consistent with the Court's ruling on this Report and Recommendation, within fourteen (14) days of the presiding United States District Judge's ruling on this Report and Recommendation.

4.      If Plaintiff seeks to proceed anonymously at trial, she should be required to file a motion seeking such relief no later than forty-five (45) days prior to the final pretrial conference.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 11, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. The parties are warned that the Court will not extend these deadlines.  To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.


Copies furnished to:

Counsel of Record
Unrepresented Parties